Hough, J.
The petition in error sets out two grounds of error:
1. That the court of appeals erred in refusing plaintiff in error leave to file an amended petition.
2. That the court of appeals erred in rendering a judgment for the defendant in error dismissing the petition of plaintiff in error.
The second ground of error of course raises all legal questions that can be fairly raised from the record.
*463 The first ground of error involves the discretion of the lower court, and could be disturbed only if there appeared to have been an abuse of discretion. We are able to find no indication of such an abuse.
In reviewing the record for the purpose of determining the second ground of error, a consideration of the petition filed by the property owners is the first matter of importance, because it is conceded that the legislation for the improvement of the street was begun at the instance of these petitioners and under their petition. The petition of the property owners is designated in the record as defendants’ Exhibit B, and is dated May 1, 1912, and the first action by council under it appears from defendants’ Exhibit A to have been taken on the 11th day of June, 1912. The petition reads as follows:

“Cincinnati, Ohio, May i, 1912.

“Hon. Charles A. Aull, Councilman 20th Ward, 1127 Carson Ave., Price Hill, City.
“Dear Sir: We, the undersigned, citizens, residents, property owners and taxpayers, hereby urgently request you to have sewer connections and the street made on what is known on Trenton avenue (formerly Seventh avenue) at as early a date as possible, because this locality is becoming very thickly settled and the sewer connections especially are in very bad conditions, and unless the sewer and street is made at once much sickness might result. We, therefore, trust that you will take the matter up immediately with council or such committee as have charge of this matter and have *464 the work pushed to completion, as well as the trunk sewer extending under Eighth street and continuing in a southerly direction for a distance of several hundred feet or more.”
The petition is signed by some forty or more names.
The authority of council to proceed upon petition of property owners is found in Section 3836, General Code, which reads as follows:
“When a petition subscribed by three-fourths in interest of the owners of property abutting upon a street or highway of any description between designated points, in a municipal corporation, is regularly presented to the council for that purpose, the entire cost of any improvement of such street or highway, without reference to the value of the lands of those who subscribed such petition, may be assessed and collected in equal annual instalments, proportioned to the whole assessment, in a manner to be indicated in the petition, or if not so indicated, then in the manner which may be fixed by the council. The interest on any bonds issued by the corporation, together with the annual instalments herein provided for, and the costs of such proceedings and assessments, shall be assessed upon the property so improved. When the lot or land óf one who did not subscribe the petition is assessed, such assessment shall not exceed thirty-three and one-third per cent, of the actual value of his lot or land * * *.”
A construction of this section leads to the conclusion that when a petition is filed by three-fourths in interest of the owners of property abutting upon *465 the street between the designated points, the petitioners may by their act, depending upon the proper legal construction of the language used in their petition, take themselves out of the protective limitations of other statutes.
The decisions hold the effect to be that there is a waiver on their part of other statutory limitations upon assessments, and even go so far as to hold a waiver of constitutional rights. Some of the decisions treat such petition as an offer or proposition to the city officials, which being accepted by the enactment of legislation thereunder in furtherance of the requests or directions given by the petitioners makes a contract on the part of those petitioning, under which they are bound to pay their proportion of the resultant cost irrespective of amount.
Section 3911, General Code, provides that proceedings with respect to improvements shall be liberally construed by the councils and courts, but the same section also provides that the proceedings shall be strictly construed in favor of the owner of the property assessed or injured in respect to the limitations of the assessment .properly chargeable against his property, and in respect tó the compensation for damages sustained by reason of the improvement.
Section 3911, General Code, supra, is a general statute, and we have no doubt of its application to cases that arise under Section 3836, General Code, and the rule of construction applied to cases of improvement upon petition, and, including as it always does the limitation of the assessment that may be *466 legally charged against the petitioner’s property, must be one of strict construction against the city and in favor of the petitioners. The petitioners then are bound by the offer or proposition which they have tendered by their petition, only in the event that a strict construction of the language used in the petition will so warrant.
In the case under consideration the petitioners “urgently request you to have sewer connections and the street made on what is known on Trenton avenue (formerly Seventh avenue) at as early a date as possible, because this locality is becoming very thickly settled and the sewer connections especially are in very bad conditions, and unless the sewer and street is made at once much sickness might result.”
They fail to state what kind of a street they desire, but do use language which indicates clearly that they want a sanitary sewer constructed. They say nothing in reference to how the cost shall be paid, and nothing in reference to any limit of assessments to be charged against their property. Do they mean that they are willing to pay whatever may be assessed against them without limit, or do they expect to stand on the limits of assessment imposed by law generally?
Section 3836, General Code, does not assist us much in answering this question. It provides that when a petition of property owners abutting upon the street is regularly presented to council for that purpose, the entire cost without reference to the value of the lands, may be assessed, etc.
*467 It would seem that the natural construction of this language would be that the phrase “for that purpose” must refer to “the entire cost,” etc. The petition presented in no way makes an offer or proposition upon the subject of the entire cost, nor does it in any way speak of the whole or any part of the cost. The section further provides that where the petition is silent upon the subject of the cost, then the entire cost may be assessed “in the manner which may be fixed by the council.” Manner within what limits? Does this mean that council may fix it without limit, or within the limitations imposed by other sections of the assessment law ?
Applying the rule of strict construction to this petition, if it stood alone without further means of interpretation it would be necessary to hold that there would be no warrant or justification for imposing assessments to an amount greater than the limit allowed by law. It, however, appears that later a second petition was presented (defendants’ Exhibit G), which eventually was filed with the council, also signed by plaintiffs below, which reads as follows:

“Jan. 28, 1913.

“To Henry M. Waite, Chief Engineer, and the Committee on Streets, City Council, City.
“Gentlemen: We, the undersigned citizens, residents and taxpayers, living on and in the vicinity of Trenton avenue, Price Hill, respectfully request you to have Trenton avenue paved from West Eighth street to Foley road, the same as the ordi *468 nance is now introduced in council, so as to make it a continuous thoroughfare. We respectfully protest against making only a part of Trenton avenue, and urge your committee to make this improvement of Trenton avenue to Foley road so as to accommodate all the people of the neighborhood, we also request you to have the fill of dirt made at the culvert.”
Some forty names are also attached to this petition.
This request to have Trenton avenue paved from West Eighth street to Foley road, the same as the ordinance is now introduced in council, was followed by a protest against making only a part of Trenton avenue. The question then is, What effect does this protest have upon whatever offer or proposition was made? The space from West Eighth street to Foley road lies part of the way within the corporation; the other part, terminating at Foley road, lies outside. The protest indicates that the petitioners were desirous of having the entire street to Foley road, both within and without the corporation, constructed.. Under the rule of strict construction, did they make this a condition to the petition, and, if they did make it a condition, was it a proper one ?
The officials of the city of Cincinnati had no control or jurisdiction over the part of the street outside the corporate limits, and the petitioners either knew this, or they should have known it. The fact that the city had no authority to build the street outside the corporation, with the further fact that a part of this street was outside the corporation, *469 which was known or should have been known to the petitioners, necessarily leads to the conclusion that the condition imposed in the form of this protest was an improper one which in no wise affects the rights of the petitioners.
In one part of their petition they say, “The same as the ordinance is now introduced in council.” What ordinance was introduced in council at that time ? The record discloses the fact that some legislation was prepared and presented to the city council, although whether or not any had been passed at this time is a matter of some uncertainty. But the second petition says in effect that an ordinance “is introduced.” From the record we find that the committee on parks and streets, on the 30th day of December, 1912, recommended that a resolution declaring the necessity for the improvement be prepared, and that that recommendation was adopted. Counsel for the defendants in error in their brief, on page 13, mention “legislation then pending.” The court of appeals in its opinion states that a resolution of necessity was passed on March 11, 1913, and that a second petition was filed on the same day.
We therefore conclude that the ordinance mentioned in the second petition as being introduced in council was the resolution of necessity, which was later passed, and upon which the subsequent legislation was predicated and the improvement constructed. The petitioners therefore knew that it was contemplated on the part of the city to grant the request of the petition of the property owners and to construct the improvement thereunder.
*470 Therefore plaintiff in error knew that the council had declared the necessity to improve Trenton avenue from West Eighth street to the corporation line, by grading, setting cement curb, paving, setting the necessary drain, inlets, and retaining walls, and laying a six-inch water main. And with this knowledgé the second petition was filed, again petitioning for the improvement, knowing that two per cent, of the whole cost of the improvement, and the cost of intersections, would be paid by the city, and the balance of the entire cost would be assessed by the foot front on all the lots and lands bounding and abutting the improvement.
Under this condition of affairs plaintiff in error, and associated plaintiffs below, cannot be heard to complain of the carrying out of the purposes set out in this resolution, inasmuch as they acquiesced therein by requesting the improvement by petition, and subsequently renewed their request after knowledge on their part of the kind and character of street to be made and the method of payment therefor. It must be admitted that they knew the contents of the resolution of necessity.
The two petitions, then, together with the acquiescence of the parties after knowledge of the terms of the legislation, will preclude them from complaining about the fair and natural results in the carrying out of the improvement.
Section 3812, General Code, provides for the improvement of any street, alley, etc., by grading, draining, curbing, paving, repaving, repairing, constructing sidewalks, sewers, drains, etc. The subject contained in this section is improvement, either *471 of a street, alley, or other thing mentioned in the section; and in the improvement of a street the authority is given to do numerous things towards that improvement, such as paving, draining, curbing, constructing sewers, etc.
The city council through proper legislation may do any one or all of these things, and it is very clear to us that it may do any one or all of such things in one set of proceedings, so that the contention made here, that the paving of the street and the laying of the water mains were illegally considered under one such set of proceedings, is not well taken. The subject of the legislation is improvement, and the resolution of necessity contains only one subject.
The first petition requested that the sewer be built and the street be made. The reason assigned for the necessity of the sewer, as expressed in the petition, was to prevent sickness. The petitioners were asking for the construction of a sewer, having in mind the health of the public. It is conceded in the record that the city constructed a sanitary sewer, although it appears that the sewer was also utilized to carry away the surface water. The resolution of necessity, the passage of which fixes and limits jurisdiction in municipal improvements, fails to include or provide for the construction of a sewer.
It asserts that it is necessary to improve the street by grading, setting cement curb, paving the roadway, constructing the necessary drain's, inlets, and retaining walls, and laying a six-inch water main, and does not include the construction of a sanitary sewer.
*472 It must be conceded that a municipality cannot build a sanitary sewer and assess any property for the cost thereof, no matter whether that property is represented by petition or not, unless the proper legislation of council is passed to clothe the city with the authority therefor. This is a fundamental principle and jurisdictional.
It is contended by the city that the word “drain;” as used in the proceedings, is broad enough in construction to include a sanitary sewer. With this view we cannot agree, although realizing full well that in common, ordinary usage the two words “drain” and “sewer” have to some extent been treated as synonymous and interchangeable. Applied, however, to public city improvements in the streets, we believe that the two terms have come to have their own distinctive meanings, and are easily distinguishable one from the other.
A drain is an incident to street building. No engineer would think of constructing a street without providing for the drainage of that street. It is an essential element of good workmanship and substantial construction, and it is highly important that drains be provided to prevent the accumulation of water upon the surface of the street and adjacent territory, for the purpose of preventing early decay and deterioration of the street. By reason of its construction a street may receive surface water, and frequently does, from territory outside of its own compass, from the terraces of abutting property and from the roofs of houses thereon.
The word sewer, on the other hand, when applied to city improvements, means a large, underground *473 passage for fluid, and feculent matter — the refuse and filth necessarily present in populated centers — by means of which this matter is carried off. A sewer is employed for the convenience of the people, and its prime purpose is for the benefit of the health of the public.
An important and expensive improvement, such as a sanitary sewer, certainly cannot be provided for without invoking power so to do in the manner provided by law, and it will not do to claim that right, or attempt to invoke that power, through the guise or deceit of an improper name.
We have therefore reached the conclusion that such part of the assessment as was charged against the properties of the parties to this action for the building of the sewer was improper and illegal, and the defendants in error will be enjoined from collecting that portion of the assessment.
The temporary injunction heretofore allowed is made permanent so far as it applies to the portion of the assessments against the property of plaintiff in error levied on to pay the cost of the sanitary sewer, and the injunction is vacated so far as it applies to the residue of the assessments, and the case is remanded to the court of appeals of Hamilton county, for such proceedings as are necessary to carry this judgment into effect.

Judgment modified and affirmed as modified.

Marshall, C. J., Johnson, Wanama&ER and Jones, JJ., concur.